## IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
## DIVISION THREE

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | |
| | ) | No. 33770-7-III |
| Respondent, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| VENIAMIN "BEN" GLUSHCHENKO, | ) | UNPUBLISHED OPINION |
| | ) | |
| Appellant. | ) | |

SIDDOWAY, J. — Veniamin Glushchenko appeals his convictions for first degree burglary, first degree assault, residential burglary, and first degree robbery arising out of back to back crimes committed at two homes in a residential neighborhood. He challenges (1) the sufficiency of the evidence to support the jury's verdict finding him guilty of first degree assault, (2) the trial court's sentencing determination that his first degree burglary was not the same criminal conduct as the robbery and assault into which it escalated, and (3) the trial court's failure to conduct a *Blazina*[1] inquiry into his ability to pay legal financial obligations. We are unpersuaded by those three challenges or by additional errors alleged in a pro se statement of additional grounds. We affirm.

---

[1] *State v. Blazina*, 182 Wn.2d 827, 344 P.3d 680 (2015).

No. 33770-7-III
*State v. Glushchenko*

FACTS AND PROCEDURAL BACKGROUND

On a late afternoon in December 2014, Veniamin Glushchenko broke into a home on 32nd Avenue in Spokane. He was in the process of taking a laptop computer from a coffee table near where the homeowner, Ugur Erol was sleeping, when Mr. Erol woke up. Upon seeing Mr. Erol awake, Mr. Glushchenko told him to "turn around" but Mr. Erol did not—he saw that Mr. Glushchenko was holding what appeared to be two steak knives, and he feared that if he turned around, Mr. Glushchenko would stab him in the back. Report of Proceedings (RP)[2] at 74. When he failed to turn away, an angered Mr. Glushchenko began swinging the knives at Mr. Erol, slashing him several times. Hurt, bleeding, and fearing additional injury, Mr. Erol fled out his front door. He called 911 from a neighbor's home.

Not long thereafter, Brenda Eberhart was taking a nap at her 32nd Avenue home when she was awakened by the sound of shattering glass. When she entered her kitchen and turned on the light, she saw Mr. Glushchenko standing outside her broken kitchen window. He tried to grab her and demanded that she give him her money. When she said she did not have any and then began screaming, Mr. Glushchenko left.

---

[2] All citations to the verbatim report of proceedings are to the two consecutively-paginated volumes containing trial proceedings taking place from August 10 through 13, 2015, and Mr. Glushchenko's sentencing on August 27, 2015.

2

Officer Nathan Gobble responded to Mr. Erol's 911 call and obtained his description of the intruder. Lieutenant Rex Olson apprehended Mr. Glushchenko, who fit the description, a few blocks from Mr. Erol's home, in a parking lot near the Off Regal Bar. Mr. Glushchenko drew the lieutenant's attention because he appeared to have been hiding between cars, but got up and approached the door of the bar when the lieutenant pulled into the lot. The lieutenant noticed blood on the back of Mr. Glushchenko's hands as he was handcuffing him.

Officers responding to Ms. Eberhart's home took her to where Mr. Glushchenko was being held following his apprehension and she identified him as the man who broke the window at her home. Later that evening, Mr. Erol, who had been taken to the hospital for treatment of his wounds, identified Mr. Glushchenko from a photo array. Officers who had been given permission by Mr. Erol to search his home found what Mr. Erol would identify as Mr. Glushchenko's weapons: two of the household's steak knives, with blades between four and a half and five inches in length.

As crimes against Mr. Erol, the State eventually charged Mr. Glushchenko with first degree burglary, first degree robbery, and first degree assault, all with deadly weapon enhancements. It charged him with residential burglary for his crime against Ms. Eberhart. The challenges made on appeal focus on the convictions for the crimes against Mr. Erol.

3

At trial, evidence was presented that when officers responded to Mr. Erol's 911 call, he was bleeding from his neck, his knee, and had wounds on his shin, shoulder, head, and ear. In addition to offering photographs of his wounds as evidence, the State called Dr. Rana Ahmad, who treated Mr. Erol at the emergency room. Dr. Ahmad testified that Mr. Erol's 11-centimeter neck wound and thigh wound were the most prominent of his wounds. He testified that Mr. Erol's neck wound would have been life threatening if he had not received treatment, because he could have bled to death or the wound could have become infected. Dr. Ahmad classified the wound as "deep" even though neither the esophagus nor any of the large arteries or veins were injured, because the slash wound passed through both the fat layer and a muscle layer. RP at 136.

Mr. Erol testified that when he ran out of the front door of his house, he believed he was escaping a life-threatening assault by Mr. Glushchenko.

At the conclusion of trial, the jury found Mr. Glushchenko guilty of all charges. It returned special verdicts finding that he was armed with a deadly weapon when committing the first degree burglary, first degree robbery, and first degree assault.

At sentencing, the trial court heard argument about whether the burglary, robbery, and assault involving Mr. Erol constituted the same criminal conduct for sentencing purposes. It determined that only the robbery and assault constituted the same criminal conduct, based on its finding that Mr. Glushchenko's original intent, before Mr. Erol awoke and the situation escalated, had been only to steal. It sentenced Mr. Glushchenko

4

to a midrange sentence of 243 months' confinement and an additional 48 months' confinement for two deadly weapon enhancements, for a total of 291 months. It also imposed $800 in legal financial obligations, to which Mr. Glushchenko did not object.

Mr. Glushchenko appeals.

## ANALYSIS

### *Evidence sufficiency*

"A person is guilty of assault in the first degree if he or she, with intent to inflict great bodily harm . . . [a]ssaults another with . . . any deadly weapon." RCW 9A.36.011(1)(a). Mr. Glushchenko first argues that the State's evidence was insufficient to support the essential element of first degree assault that the defendant intended to inflict great bodily harm. The jury was properly instructed that for purposes of that element, "Great bodily harm means bodily injury that creates a probability of death, or that causes significant serious permanent disfigurement, or that causes a significant permanent loss or impairment of the function of any bodily part or organ." Clerk's Papers (CP) at 164; RCW 9A.04.110(4)(c).

Evidence is sufficient if, viewed in a light most favorable to the State, it permits any rational trier of fact to find the essential elements of the crime beyond a reasonable doubt. *State v. Salinas*, 119 Wn.2d 192, 201, 829 P.2d 1068 (1992). "A claim of insufficiency admits the truth of the State's evidence and all inferences that reasonably can be drawn therefrom." *Id.* We defer to the fact finder on issues of witness credibility

5

and persuasiveness of the evidence. *State v. Thomas*, 150 Wn.2d 821, 874-75, 83 P.3d 970 (2004).

First degree assault requires proof of specific intent, which is intent to produce a specific result: in the case of first degree assault, to inflict great bodily harm. *State v. Elmi*, 166 Wn.2d 209, 215, 207 P.3d 439 (2009). In determining intent, the "jury may consider the manner in which the defendant exerted the force and the nature of the victim's injuries to the extent that it reflects the amount or degree of force necessary to cause the injury." *State v. Pierre*, 108 Wn. App. 378, 385, 31 P.3d 1207 (2001). While specific intent may not be presumed, the jury may infer it "as a logical probability from all the facts and circumstances." *State v. Wilson*, 125 Wn.2d 212, 217, 883 P.2d 320 (1994).

Mr. Glushchenko argues that the State presented no evidence that Mr. Erol's wounds presented a risk of probable death, or any significant permanent disfigurement, or any impairment of the function of any body part or organ. But RCW 9A.36.011(1)(a) does not require proof that the defendant *inflicted* great bodily harm; it requires that the defendant *intended* to inflict great bodily harm. *State v. Alcantar-Maldonado*, 184 Wn. App. 215, 225, 340 P.3d 859 (2014).

Mr. Glushchenko also argues that his intent was only to steal, but there was evidence from which jurors could find otherwise. Mr. Erol testified that Mr. Glushchenko assaulted him angrily, repeatedly telling him, "[T]urn around bitch," and

6

continued the assault even after Mr. Erol tried to convince Mr. Glushchenko to take what he wanted and leave. RP at 76. Mr. Erol told jurors that he "realized that my life was in danger," and he thought he was "going to bleed out" unless he made a run for the front door and escaped. RP at 78. Dr. Ahmad affirmed that the wounds inflicted by Mr. Glushchenko were deep. And since Mr. Erol *did* make a run for it, rational jurors could infer that Mr. Glushchenko had intended to inflict even more harm had Mr. Erol not escaped.

The evidence was sufficient.

### *Same criminal conduct*

Mr. Glushchenko argues next that the trial court abused its discretion in finding, for purposes of calculating his offender score, that the first degree burglary of Mr. Erol's home was not the same criminal conduct as the robbery and assault.

If concurrent offenses encompass the same criminal conduct, they are treated as one crime for the purpose of calculating the defendant's sentence. RCW 9.94A.589(1)(a). The Sentencing Reform Act of 1981 (SRA), chapter 9.94A RCW, defines "same criminal conduct" as "two or more crimes that require the same criminal intent, are committed at the same time and place, and involve the same victim." RCW 9.94A.589(1)(a). All three criteria must be present for a finding of same criminal conduct. *State v. Lessley*, 118 Wn.2d 773, 778, 827 P.2d 996 (1992). For purposes of the "same criminal intent" criterion, intent can be measured by whether one crime furthered

7

another. *Id.* Although this issue would be moot if the trial court applied the burglary antimerger statute, Mr. Glushchenko insists that the court did not consider that statute in his case. Br. of Appellant at 12.[3] To avoid the need to remand we will assume he is correct.[4]

This court will not disturb a trial court's determination of whether two crimes involve the same criminal conduct unless there is clear abuse of discretion or a misapplication of the law. *State v. Elliott*, 114 Wn.2d 6, 17, 785 P.2d 440 (1990). "Under this standard, when the record supports only one conclusion on whether crimes constitute 'same criminal conduct,' a sentencing court abuses its discretion in arriving at a contrary result." *State v. Aldana Graciano*, 176 Wn.2d 531, 537-38, 295 P.3d 219 (2013). "[W]here the record adequately supports either conclusion," however, the matter lies within the trial court's discretion. *Id.* at 538.

Mr. Glushchenko argues that the only criterion about which there could be any doubt is whether his criminal intent remained the same during his three crimes against

---

[3] RCW 9A.52.050 provides, "Every person who, in the commission of a burglary shall commit any other crime, may be punished therefor as well as for the burglary." A sentencing court may exercise discretion to impose separate punishments for burglary and crimes committed during the burglary even if the crimes encompass the same criminal conduct. *Lessley*, 118 Wn.2d at 781.

[4] The trial court mentioned the antimerger statute in explaining and announcing its sentence. *See* RP at 315. But it also discussed the "same criminal conduct" criteria and found that Mr. Glushchenko did not have the same criminal intent in committing the burglary as he did in committing the robbery and assault.

Mr. Erol, and there could be no *reasonable* doubt that it did. He appears to contend that he entered the home intending to steal and to do whatever was necessary to accomplish that aim. The State, on the other hand, argues that although Mr. Glushchenko entered Mr. Erol's home with the intent to steal, he did not intend to encounter anyone—and once he did, he could have abandoned the effort and left. It contends that stabbing Mr. Erol could not possibly have been Mr. Glushchenko's intent when he entered the home.

Either conclusion could be drawn from the evidence. The trial court did not abuse its discretion.

### *Legal financial obligations*

For the first time on appeal, Mr. Glushchenko argues that the trial court imposed legal financial obligations (LFOs) without conducting the individualized on the record inquiry into ability to pay required by *Blazina*. He asks that we remand so that the required inquiry can be made.

Mr. Glushchenko overlooks the fact that the trial court imposed only mandatory LFOs[5] and restitution. A *Blazina* inquiry is required only for discretionary LFOs. *State v. Clark*, 191 Wn. App. 369, 373, 362 P.3d 309 (2015) (citing *State v. Lundy*, 176 Wn.

---

[5] A $500 victim assessment fee, a $100 DNA (Deoxyribonucleic acid) collection fee, and a $200 filing fee, none of which is subject to RCW 10.01.160(3). *State v. Clark*, 191 Wn. App. 369, 374, 362 P.3d 309 (2015).

App. 96, 102, 308 P.3d 755 (2013)), *review granted in part*, 187 Wn.2d 1009 (2007). No remand is required.

## STATEMENT OF ADDITIONAL GROUNDS

In a pro se statement of additional grounds (SAG), Mr. Glushchenko asserts his innocence, claiming he had an alibi for the night the crimes were committed and that DNA testing would exonerate him. He complains about the criminal justice system in general and about the investigation, trial, and criminal justice system participants in his case in particular. Only four errors are sufficiently identified for review. *See* RAP 10.10(c) (A SAG must "inform the court of the nature and occurrence of alleged errors"; we will not search the record in support of claims.).

*Prosecutorial vindictiveness*. Mr. Glushchenko argues his due process rights were violated because the prosecutor acted vindictively when he amended the charges to include first degree robbery after Mr. Glushchenko refused the offer of a plea deal. Prosecutorial vindictiveness as a basis for appeal exists "when 'the government acts against a defendant in response to the defendant's prior exercise of constitutional or statutory rights.'" *State v. Korum*, 157 Wn.2d 614, 627, 141 P.3d 13 (2006) (quoting *United States v. Meyer*, 810 F.2d 1242, 1245 (D.C. Cir. 1987)). "'[A] prosecutorial action is "vindictive" only if *designed* to penalize a defendant for invoking legally protected rights.'" *Id.* (quoting *Meyer*, 810 F.2d at 1245).

10

When a prosecutor adds charges following a defendant's exercise of legally protected rights, it does not amount to vindictiveness or even give rise to presumption of vindictiveness unless "a defendant can prove that 'all of the circumstances, when taken together, support a realistic likelihood of vindictiveness.'" *Id.* (quoting *Meyer*, 810 F.2d at 1246). Courts have "emphatically rejected the notion that filing additional charges after a defendant refuses a guilty plea gives rise to a presumption of vindictiveness." *Korum*, 157 Wn.2d at 629.

In this case, the State agreed not to charge certain counts in exchange for a plea agreement, a practice explicitly permitted by RCW 9.94A.421(5). When plea negotiations failed, it moved to amend the information to add the count of first degree robbery. The court granted its request. Mr. Glushchenko provides no support for his claim of prosecutorial vindictiveness aside from his bald assertion, which is insufficient.

*Ineffective assistance of counsel.* Mr. Glushchenko complains that his trial lawyer failed to present evidence of his alibi and "threatened [him] to not testify," implicitly asserting ineffective assistance of counsel. SAG (Attachment) at 3.

The Sixth Amendment to the United States Constitution guarantees a criminal defendant the right to effective assistance of counsel. *Strickland v. Washington*, 466 U.S. 668, 686, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984). To establish ineffective assistance of counsel, a defendant must demonstrate both that defense counsel's representation was deficient and that the deficient representation prejudiced the defendant. *State v.*

11

No. 33770-7-III
*State v. Glushchenko*

*McFarland*, 127 Wn.2d 322, 334-35, 899 P.2d 1251 (1995). When, as here, ineffective assistance of counsel is raised on direct appeal, the burden is on a defendant to show deficient representation based on the record established in the proceedings below. *Id.* at 335. If a defendant wishes to raise issues on appeal that require evidence or facts not in the existing trial record, the appropriate means of doing so is through a personal restraint petition. *Id.*

The record on appeal does not demonstrate that Mr. Glushchenko had an alibi witness whom his trial lawyer unreasonably failed to call to testify. It does not demonstrate that Mr. Glushchenko's failure to testify was the result of a threat by his lawyer.[6] If Mr. Glushchenko wishes to pursue these claims, he will need to file a personal restraint petition supported by evidence.

*Offender score*. Mr. Glushchenko argues for the first time on appeal that his offender score was a "two" prior to trial. At sentencing, he agreed that his pretrial offender score was four:

---

[6] In fact, the record tends to undercut that assertion. At the close of the State's case, Mr. Glushchenko's trial lawyer asked for a brief recess to confer with his client, after which he reported to the court:

> I don't have any defense witnesses to present. I did tell Mr. Glushchenko that whether he testified or not, despite whatever my advice is, it's totally his decision. His decision at this point is not to testify.

RP at 241.

12

> THE COURT: . . . he's a four. Are you stipulating that he's a four?
>
> [DEFENSE COUNSEL]: Your Honor, my calculations he's a four on the residential burglary, five on the other.
>
> [PROSECUTOR]: That's correct.
>
> . . . .
>
> THE COURT: Okay. So the criminal history that I have in front of me other than the second one, which has the Florida conviction which isn't countable at this point, do you have any issues with this prior criminal history?
>
> [DEFENSE COUNSEL]: No. I reviewed that with Mr. Glushchenko before, and he doesn't have a dispute as to the countable criminal history.
>
> THE COURT: Okay. And he did not sign this.
>
> [DEFENSE COUNSEL]: He did sign it. I think he signed it with an X.
>
> THE COURT: So, Mr. Glushchenko, is that your signature, that X on there?
>
> [MR. GLUSHCHENKO]: (Defendant nods head.)
>
> THE COURT: You don't have an actual signature?
>
> [MR. GLUSHCHENKO]: (Defendant shakes head.)

RP at 306-07.

"At sentencing, the State bears the burden to prove the existence of prior convictions by a preponderance of the evidence." *State v. Mendoza*, 165 Wn.2d 913, 920, 205 P.3d 113, (2009). While due process imposes the burden of providing an adequate record on the State, "This is not to say that a defendant cannot affirmatively acknowledge his criminal history and thereby obviate the need for the State to produce evidence." *Id.* Affirmative acknowledgment requires more than the mere failure to object to a prosecutor's recitation of criminal history or the mere agreement with the ultimate sentencing recommendation. *Id.* at 928. Here, Mr. Glushchenko affirmatively

13

acknowledged the correctness of the criminal history and pretrial offender score provided by the State, so he cannot object to the adequacy of the record.

In addition, while a defendant cannot agree to a sentence in excess of statutory authority, "waiver can be found where the alleged error involves an agreement to facts, later disputed, or where the alleged error involves a matter of trial court discretion." *In re Pers. Restraint of Goodwin*, 146 Wn.2d 861, 874, 50 P.3d 618 (2002). Before we even reach a *Goodwin* analysis of waiver, however, a defendant must show that a sentencing error *was* made, not merely that one might have been made. *State v. Ross*, 152 Wn.2d 220, 231-32, 95 P.3d 1225 (2004). Mr. Glushchenko does not make a threshold showing that an error was made.

*Excessive sentence.* Finally, Mr. Glushchenko argues that the trial court's imposition of two deadly weapon enhancements caused his sentence to exceed the statutory maximum. The total sentence for a given offense, including enhancements to the sentence for that offense, cannot exceed the statutory maximum. RCW 9.94A.533(4)(g); *State v. DeSantiago*, 149 Wn.2d 402, 421, 68 P.3d 1065 (2003).

Mr. Glushchenko's crimes to which the deadly weapon enhancements applied were all class A felonies. RCW 9A.52.020(2) (first degree burglary); RCW 9A.36.011(2) (first degree assault); RCW 9A.56.200(2) (first degree robbery). The maximum allowable sentence for a class A felony is life imprisonment. RCW 9A.20.021(1)(a).

No. 33770-7-III
*State v. Glushchenko*

Even with the enhancements, Mr. Glushchenko's sentence does not come close to the statutory maximum.

Affirmed.

A majority of the panel has determined this opinion will not be printed in the Washington Appellate Reports, but it will be filed for public record pursuant to RCW 2.06.040.

_____
Siddoway, J.

WE CONCUR:

_____
Fearing, C.J.

_____
Lawrence-Berrey, J.