# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| STATE OF WASHINGTON, | No. 51629-2-II |
| Respondent, | |
| v. | |
| RYAN ESTAVILLO, | UNPUBLISHED OPINION |
| Appellant. | |

WORSWICK, J. — Ryan Estavillo appeals his convictions and various legal financial

obligations (LFOs) for one count each of first degree robbery,[1] first degree unlawful possession

of a firearm,[2] and first degree theft.[3] Estavillo argues that the trial court erred in admitting his

statements at trial because he was not adequately provided his *Miranda*[4] warnings. The State

argues Estavillo failed to preserve this argument. He also argues, and the State concedes, that

the trial court improperly imposed various LFOs, namely a criminal filing fee, a DNA

(deoxyribonucleic acid) collection fee, collection costs, supervision assessment, and interest.

We hold that Estavillo failed to preserve his argument regarding the *Miranda* warnings.

Further, we hold that the trial court properly imposed the supervision assessment, but improperly

---

[1] RCW 9A.56.200.

[2] RCW 9.41.040 (2018).

[3] RCW 9A.56.030.

[4] *Miranda v. Arizona*, 384 U.S. 436, 86 S. Ct. 1602 (1966).

imposed the other LFOs. Accordingly, we affirm Estavillo's convictions, but remand to strike the improper LFOs.

FACTS

Estavillo and a female accomplice devised a plan to entice men to a motel room where the men believed they would have a sexual encounter with a prostitute. On two separate occasions, men went to the motel room where the accomplice was waiting.

On the first occasion, a man entered the motel room and began to undress. There was a loud knock at the door, and the accomplice let Estavillo inside. Estavillo pointed a stun gun at the man and told him to leave his money in the room. The man left money and exited the room.[5]

On the second occasion, the victim entered the motel room, paid the accomplice with five 20-dollar bills, and began to undress. Estavillo came into the room, hit the victim in the face, and displayed a gun. Estavillo told the victim to empty his pockets. After being threatened, the victim surrendered two knives, a challenge coin, a leather sheathe, and two bracelets.[6] The victim grabbed his clothes and ran out of the room shouting that Estavillo had a gun. Motel staff called law enforcement officers. Estavillo left the gun with an acquaintance in a neighboring room. The gun was eventually provided to law enforcement officers.

Law enforcement officers contacted Estavillo, placed him in hand restraints, and sat him down on a nearby curb. Bremerton Police Officer Steven Forbragd asked Estavillo what happened, and Estavillo made statements to Officer Forbragd. Estavillo stated that the man was

---

[5] This incident forms the basis of the theft charge.

[6] This incident forms the basis of the first degree robbery and first degree unlawful possession of a firearm charges.

"buck-a\*\* naked on top of [Estavillo's] girlfriend in the hotel room." Verbatim Report of Proceedings (VRP) (March 8, 2018) at 157. Estavillo said he asked the man to leave, grabbed him, and placed him against the wall to detain him.

Following a brief period of time, Officer Forbragd placed Estavillo under arrest and read *Miranda* warnings from his department-issued card to Estavillo. Estavillo made additional statements to Officer Forbragd. Estavillo stated that he walked in on the man in the room, told him to get out, and pushed him out of the room. Estavillo denied detaining the man.

During the police investigation, law enforcement officers searched motel room, interviewed witnesses, and photographed the victim's face. Officers located the knives, coin, sheathe, and bracelets in the hotel room where the robbery occurred, and discovered five 20-dollar bills in the accomplice's possession. The State charged Estavillo with first degree robbery, first degree unlawful possession of a firearm, first degree theft, and second degree promoting prostitution.

Officer Forbragd testified at Estavillo's CrR 3.5 hearing. Officer Forbragd stated that after restraining and frisking Estavillo for weapons, Officer Forbragd asked Estavillo what was going on, and Estavillo made statements. A few minutes later, Officer Forbragd placed Estavillo under arrest and read Estavillo *Miranda* warnings from a department-issued card. Officer Forbragd did not testify as to what the card said. Estavillo stated that he understood his rights. Estavillo then made additional statements.

Estavillo also testified at the CrR 3.5 hearing, stating that an officer "came and read me my *Miranda* rights." VRP (March 8, 2018) at 101. When asked if he understood his rights, Estavillo testified, "Yeah. Yeah." VRP (March 8, 2018) at 103. At the CrR 3.5 hearing,

Estavillo argued only that the initial statements he made before being read the *Miranda* warnings were inadmissible. Estavillo did not argue that Officer Forbragd inadequately provided Estavillo with *Miranda* warnings or that the statements after the *Miranda* warnings were inadmissible.

The trial court ruled that all of Estavillo's statements were admissible. The trial court's finding of fact 8 found that Officer Forbragd read *Miranda* warnings to Estavillo from a department-issued card, and finding of fact 9 found that Estavillo understood the *Miranda* warnings and agreed to speak to Forbragd. The trial court concluded that Estavillo knowingly, voluntarily, and intelligently waived his *Miranda* rights. The trial court concluded that all of Estavillo's statements were admissible.

The matter proceeded to a jury trial. Nineteen witnesses, including both victims and Estavillo's accomplice, testified to the above facts. Additionally, the jury viewed a photograph of a victim with facial injuries; copies of messages from and to Estavillo, the accomplice, and the victims; and a video clip of one victim running from the hotel room in the manner he described. The jury found Estavillo guilty of first degree robbery, first degree unlawful possession of a firearm, and first degree theft. The jury found Estavillo not guilty of second degree promotion of prostitution.

At Estavillo's sentencing hearing, the trial court found Estavillo indigent. The trial court then imposed a criminal filing fee, a DNA collection fee, collection costs, and a supervision assessment. The trial court also imposed 12 percent interest on the LFOs.

Estavillo appeals his convictions and sentence.

ANALYSIS

I. *MIRANDA* WARNINGS

Estavillo argues that because Officer Forbragd did not testify to the exact rights he read to Estavillo, the trial court's findings that Officer Forbragd read *Miranda* warnings to Estavillo and that Estavillo understood these *Miranda* warnings are unsupported by substantial evidence. The State argues that Estavillo failed to preserve this argument. We hold that Estavillo failed to preserve his argument and that the claimed error is not manifest. Accordingly, we decline to consider Estavillo's argument.

A.      *CrR 3.5 Legal Principles*

We review a trial court's ruling after a CrR 3.5 suppression hearing to determine whether substantial evidence supports the trial court's findings of fact and whether those findings, in turn, support the trial court's conclusions of law. *State v. Russell*, 180 Wn.2d 860, 866, 330 P.3d 151 (2014). Evidence is substantial when it is sufficient to persuade a fair-minded, rational person of the truth of the finding. *State v. Levy*, 156 Wn.2d 709, 733, 132 P.3d 1076 (2006). We review the trial court's conclusions of law de novo. *Russell*, 180 Wn.2d at 867.

*Miranda* warnings provide that a suspect "be warned prior to any questioning that he has the right to remain silent, that anything he says can be used against him in a court of law, that he has the right to the presence of an attorney, and that if he cannot afford an attorney one will be appointed for him prior to any questioning if he so desires." *Miranda*, 384 U.S. at 479. When a state agent conducts a custodial investigation but does not give *Miranda* warnings, we presume that the suspect's self-incriminating statements are involuntary and cannot be admitted at trial. *State v. Rhoden*, 189 Wn. App. 193, 199, 356 P.3d 242 (2015).

B.      *Estavillo Failed To Preserve His Argument*

As an initial matter, the State argues that the post-*Miranda* statements are not properly

before this court because at the CrR 3.5 hearing, Estavillo failed to raise the *Miranda* issues he

asserts on appeal.  Specifically, the State argues that at the CrR 3.5 hearing, the only issues

Estavillo raised concerned the admissibility of statements he made *before* being given *Miranda*

warnings, and that Estavillo conceded the admissibility of his statements made after Officer

Forbragd read Estavillo his *Miranda* rights.[7]  Estavillo does not respond to this argument.[8]  We

hold that Estavillo failed to preserve this argument for appeal and that any error regarding what

rights Officer Forbragd read to Estavillo is not manifest constitutional error.

A party generally may not raise an argument on appeal that the party did not make to the

trial court.  *State v. McFarland*, 127 Wn.2d 322, 333, 899 P.2d 1251 (1995).  However, RAP

2.5(a)(3) permits review of an unpreserved claim of error if that error is a "manifest error

---

[7] The State frames this as an invited error issue, stating, "Estavillo below made no argument that he was not properly advised or that he exercised his rights and thereby invited any error occasioned by omission from Officer Forbragd's testimony."  Br. of Resp't at 9-10.  Further, the State argues that Estavillo conceded the issue, inviting the error.  The invited error doctrine prohibits a party from appealing based on an error that he "set up" at trial.  *State v. Schierman*, 192 Wn.2d 577, 618, 438 P.3d 1063 (2018) (plurality opinion).

We consider whether the defendant affirmatively assented to the error, materially contributed to it, or benefited from it.  *In re Pers. Restraint of Serano Salinas*, 189 Wn.2d 747, 755, 408 P.3d 344 (2018).  In the State's briefing, it cites Estavillo's "concession" as, "I think the statements [that were] prior to *Miranda* rights being read were not voluntary."  Br. of Resp't at 8.  However, from reading the full record of Estavillo's argument at the CrR 3.5 hearing, Estavillo did not affirmatively concede.  Because a review of the record shows that Estavillo did not set up the error, and because the record cannot be fairly read to interpret Estavillo's arguments as a concession of this issue, we do not consider this issue as invited error.  Rather, we address the issue as a failure to preserve argument.

[8] Estavillo did not file a reply brief.

affecting a constitutional right." To show the error is manifest, the defendant must show actual prejudice. *State v. O'Hara*, 167 Wn.2d 91, 99, 217 P.3d 756 (2009). Prejudice is shown when it is plausible that the claimed error had practical and identifiable consequences in the trial. *O'Hara*, 167 Wn.2d at 99. If the facts necessary to adjudicate the claimed error are not in the appellate record, no actual prejudice has been shown, and the error is not manifest. *O'Hara*, 167 Wn.2d at 99.

1.      *Estavillo Did Not Raise His Argument Below*

Here, Estavillo's argument is that testimony offered during the CrR 3.5 hearing was not specific enough to support the trial court's finding that adequate *Miranda* warnings were given and waived. Estavillo argues that the record does not show Estavillo waived his specific rights, including the right to remain silent and the right to an attorney. Estavillo did not raise this argument below. Estavillo argued at the CrR 3.5 hearing only about statements he made prior to Officer Forbragd's warnings. At the hearing, Estavillo did not argue his *Miranda* warnings were inadequate.

2.      *Estavillo Fails To Show Manifest Error*

Because Estavillo did not make his argument below, he now has the burden on appeal to make a plausible showing that the State's failure to specifically identify what rights Estavillo was read created practical and identifiable consequences at trial. We hold that Estavillo does not show any error is manifest.

Here, Officer Forbragd testified only that he read a department-issued card before questioning Estavillo. The State did not request Officer Forbragd recite the warnings he provided from the department-issued *Miranda* warnings card. Officer Forbragd's testimony

ambiguously includes all *Miranda* warnings. Thus, nothing in the record supports that Estavillo was not read his complete *Miranda* warnings. And there is no evidence showing that the failure to state which *Miranda* rights Estavillo heard created errors at trial. Without anything in the record to show actual prejudice, we hold that Estavillo's claimed error is not manifest.

C.     *Alternatively, Any Error Is Harmless*

Even if the trial court erred, any resulting error was harmless. Under the constitutional harmless error standard, an error is harmless if, within the entire context of the record, we are convinced beyond a reasonable doubt that any reasonable jury would have reached the same verdict without the error. *State v. Romero-Ochoa*, 193 Wn.2d 341, 347-48, 440 P.3d 994 (2019). To make this determination, we utilize the "overwhelming untainted evidence" test, which requires us to consider the untainted evidence admitted at trial to determine if it is so overwhelming that it necessarily leads to a finding of guilt. *State v. Scherf*, 192 Wn.2d 350, 371, 429 P.3d 776 (2018).

First, Estavillo's statements did not concern the theft or the unlawful possession of a firearm charges. Initially, Estavillo stated that the man was "buck-a\*\* naked on top of [Estavillo's] girlfriend in the hotel room." VRP (March 8, 2018) at 157. Estavillo said he asked the man to leave, grabbed him, and placed him against the wall to detain him. Following Officer Forbragd's reading of *Miranda* rights, Estavillo's statements were similar to his first statements, except Estavillo "changed the story a little bit." VRP (March 8, 2018) at 95. Estavillo again stated that told the victim to get out and pushed the victim out of the room. However, in his post-*Miranda* statements, Estavillo denied grabbing the victim to detain him. Estavillo also

8

spoke about his accomplice's prostitution activities at the motel, and said he paid for the motel room.

Regarding the robbery charge, overwhelming, untainted evidence from 19 witness testimonies at trial supports Estavillo's convictions. The plan to have the accomplice lure potential male victims into a hotel room with the promise of sex was testified to by the accomplice. Facts of the robbery were testified to by the victims, the accomplice, and multiple witnesses who saw the victim immediately after the robbery. Photographic and video evidence supported these testimonies. The gun used during the robbery was recovered from a witness who testified that Estavillo gave the gun to her and her ex-boyfriend. In the context of the entire record, we hold that, beyond a reasonable doubt, a reasonable jury would have found Estavillo guilty without Estavillo's statements. As a result, we hold that any error was harmless.

## II. LFOs

Following Estavillo's initial briefing, our Supreme Court decided *State v. Ramirez*, 191 Wn.2d 732, 426 P.3d 714 (2018). In his supplemental briefing, Estavillo argues that the trial court improperly imposed a criminal filing fee, DNA collection fee, collection costs, and supervision assessment. Estavillo further argues that the trial court applied an improper interest provision. The State concedes these errors and agrees with Estavillo. We accept the State's concessions regarding the criminal filing fee, DNA collection fee, collection costs, and interest provision, and hold that the trial court erred when imposing these LFOs and interest provision insofar as it applied to non-restitution LFOs. However, we hold that the community custody supervision assessment is not a "cost" under RCW 10.01.160(3), and, therefore, was not improperly imposed.

The State concedes that the criminal filing fee, DNA collection fee, collection costs, and the interest provision are improper under recent legislative amendments and *State v. Ramirez*, 191 Wn.2d 732. We accept the State's concessions and remand to the trial court to strike the criminal filing fee, DNA collection fee, collection costs, and interest accrual on non-restitution LFOs.

Estavillo also argues, and the State concedes, that the supervision assessment must be stricken because it is a discretionary cost. Because the supervision assessment is not a cost, we disagree.

RCW 10.01.160(3) now provides that the trial court shall not order a defendant to pay *costs* if a defendant is indigent as defined in RCW 10.101.010(3)(a) through (c). Similarly, RCW 9.94A.760 now provides that the trial court cannot order "costs" as described in RCW 10.01.160 if the defendant is indigent as defined in RCW 10.101.010(3)(a) through (c). RCW 10.01.160(2) limits costs "to expenses specially incurred by the state in prosecuting the defendant or in administering the deferred prosecution program under chapter 10.05 RCW or pretrial supervision."

Here, Estavillo's supervision assessment was imposed under RCW 9.94A.703(2)(d), which states, "Unless waived by the court, as part of any term of community custody, the court shall order an offender to . . . [p]ay supervision fees as determined by the [Department of Corrections]." The supervision assessment is a discretionary LFO. *State v. Lundstrom*, 6 Wn. App. 2d 388, 396 n.3, 429 P.3d 1116 (2018).

However, the supervision assessment is not a discretionary "cost" merely because it is a discretionary LFO. Rather, the supervision assessment fails to meet the RCW 10.01.160(2)

definition of a "cost" because it is not an expense specially incurred by the State to prosecute the defendant, to administer a deferred prosecution program, or to administer pretrial supervision. Because the supervision assessment is not a cost under RCW 10.01.160, the trial court was not required to conduct an inquiry into Estavillo's ability to pay under RCW 10.01.160(2). *See State v. Clark*, 191 Wn. App. 369, 362 P.3d 309 (2015) (distinguishing fines from costs).

However, Division Three of this court noted strong policy arguments in favor of the consideration of a defendant's ability to pay discretionary LFOs even when such consideration is not required. *Clark*, 191 Wn. App. at 376. That court stated, "The barriers that LFOs impose on an offender's reintegration to society are well documented . . . and should not be imposed lightly merely because the legislature has not dictated that judges conduct the same inquiry required for discretionary costs." *Clark*, 191 Wn. App. at 376. We agree that this important policy should be broadly supported. Therefore, on remand, although the trial court is not required to reevaluate imposing the community custody supervision assessment in light of Estavillo's ability to pay, we encourage the trial court to do so.

Accordingly, we decline to accept the State's concession as to the supervision assessment. However, because we are remanding for reconsideration of other LFOs in light of Estavillo's financial status, we do not restrict the trial court from reconsidering the imposition of this discretionary assessment as well.

We affirm Estavillo's convictions, but remand for the trial court to strike the improper LFOs.

No.  51629-2-II

A majority of the panel having determined that this opinion will not be printed in the

Washington Appellate Reports, but will be filed for public record in accordance with RCW

2.06.040, it is so ordered.

_____

Worswick,

We concur:

_____

Lee, A.C.J.

_____

Cruser, J.