IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | |
| | ) | No. 32928-3-III |
| Respondent, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| JOSHUA JAMES CLARK, | ) | OPINION PUBLISHED IN PART |
| | ) | |
| Appellant. | ) | |

KORSMO, J. — Joshua Clark challenges the timeliness of his trial for possession of a stolen motor vehicle and the court's imposition of legal financial obligations. Addressing the latter issue in the published portion of this opinion, we conclude that a fine is not a "court cost" that is subject to challenge initially on appeal. The conviction and judgment are affirmed.

## FACTS

Mr. Clark was charged with possessing a stolen vehicle that he previously had owned. The vehicle had been impounded in late 2013 and eventually sold after it went unclaimed at the impound lot. The new owner reported the vehicle stolen three months after purchase. Two months after that report, the vehicle was seen in Mr. Clark's backyard. A complaint was filed and a summons issued.

The original July 28, 2014 arraignment was continued to August 4, 2014, at defense request. Clerk's Papers (CP) at 11. Mr. Clark was arraigned on August 4, and trial was scheduled for October 9, 2014; the ninetieth day from arraignment was determined to be November 3, 2014. CP at 14, 24. Mr. Clark remained out of custody on this charge. Defense counsel on September 22, 2014, sought and successfully obtained a continuance of the trial to October 23, 2014 in order to attend a prescheduled event in Burien. Mr. Clark did not personally agree to the continuance. Report of Proceedings (RP) at 9-10. Trial could not be held on October 23, however, as another case with higher time for trial priority proceeded to trial instead of Mr. Clark. His case was rescheduled to November 6.

The case proceeded to jury trial as scheduled on November 6 and concluded that same day. Mr. Clark offered no defense and the jury convicted him as charged. Sentencing was held four days later; by that time Mr. Clark was in jail after having been convicted and sentenced to nearly three years in prison on another offense.[1] A primary consideration at sentencing was whether this sentence would be served concurrently with the other file. With respect to the legal financial obligations, the prosecutor asked for

---

[1] According to Mr. Clark's pro se statement of additional grounds, he was in custody on the other case pending that trial and remained in custody throughout both trials. Nothing in the record of this case confirms or dispels that allegation, although his statement would explain why no bail was required in this case. The summons issued in this case was sent to Mr. Clark's residence in East Wenatchee.

2

"standard fines and fees" plus witness costs, totaling $1,846.62. RP at 37. Defense counsel's only mention of financial obligations was to request that payments be made at the rate of $25 per month upon release from custody "since he has the other payment in the other trial." RP at 40.

The trial court imposed the requested financial payments, including a $500 fine pursuant to RCW 9A.20.021. The court also ordered a 38-month prison sentence to be served consecutively to the earlier offense. Mr. Clark then timely appealed to this court.

## ANALYSIS

The sole issue we address in this portion of the opinion is Mr. Clark's contention that we should exercise our discretion to consider his legal financial obligation challenge. We address that argument first, before turning to his time for trial and statement of additional grounds (SAG) arguments in the unpublished portion of this opinion.

*Legal Financial Obligations*

Mr. Clark's request that we consider his legal financial obligations (LFOs) argument in this appeal initially presents the question of whether the $500 fine imposed by the trial court is a "court cost" that could be reviewed in this court's discretion. We conclude that it is not a court cost and do not review his LFO challenge.

Initially, we note some of the basic principles governing this topic. Appellate courts review a decision on whether to impose LFOs for abuse of discretion. *State v. Baldwin*, 63 Wn. App. 303, 312, 818 P.2d 1116 (1991). Discretion is abused when it is

3

exercised on untenable grounds or for untenable reasons. *State ex rel. Carroll v. Junker*, 79 Wn.2d 12, 26, 482 P.2d 775 (1971). The trial court's factual determination concerning a defendant's resources and ability to pay is reviewed under the "clearly erroneous" standard. *State v. Bertrand*, 165 Wn. App. 393, 403-04, 267 P.3d 511 (2011); *Baldwin*, 63 Wn. App. at 312.

Even the most casual reader of Washington appellate cases cannot but have noticed that LFO challenges present the most frequent issue raised to this court in the past several years. Since 1976, RCW 10.01.160(3) has provided:

> The court shall not order a defendant to pay costs unless the defendant is or
> will be able to pay them. In determining the amount and method of
> payment of costs, the court shall take account of the financial resources of
> the defendant and the nature of the burden that payment of costs will
> impose.

*See* LAWS OF 1975-76 2nd Ex. Sess, ch. 96, § 1. Despite this longstanding requirement, the topic of the defendant's ability to pay is seldom voluntarily raised at sentencing even though the defendant should have incentive to discuss the issue and is the best, and often only, source of the information the trial court needs to comply with the legislative command.

The statutory inquiry is required only for *discretionary* LFOs. *State v. Lundy*, 176 Wn. App. 96, 102, 308 P.3d 755 (2013) (mandatory fees, which include victim

4

restitution, victim assessments, DNA[2] fees, and criminal filing fees, operate without the court's discretion by legislative design); *State v. Kuster*, 175 Wn. App. 420, 424, 306 P.3d 1022 (2013) (victim assessment and DNA collection fee mandatory). Trial courts are not required to enter formal, specific findings. *Lundy*, 176 Wn. App. at 105.

After the three divisions of this court had concluded that LFO decisions unchallenged in the trial court could not be raised initially on appeal due to RAP 2.5(a)(3), the Washington Supreme Court addressed the topic in *State v. Blazina*, 182 Wn.2d 827, 344 P.3d 680 (2015). There the court agreed that the LFO issue is not one that can be presented for the first time on appeal because this aspect of sentencing is not one that demands uniformity. *Id.* at 830. To that end, the appellate courts retain discretion whether or not to consider the issue initially on appeal. *Id.* The *Blazina* court then decided to exercise its discretion in favor of accepting review due to the nationwide importance of the general issue concerning LFOs and to provide guidance to our trial courts. *Id.* at 830. The court noted that trial judges have a statutory obligation to consider RCW 10.01.160(3) at sentencing and make an individualized determination of the defendant's ability to pay discretionary LFOs. *Id.* at 837.

With these considerations in mind, we now turn to the LFOs imposed in this case. The trial court ordered that Mr. Clark pay a $500 crime victim's assessment, a $200 filing

---

[2] Deoxyribonucleic acid.

5

fee, $46.62 in witness costs, $400 for his appointed counsel, a $100 DNA collection fee,

a $500 fine, and $100 for "financial collection costs." CP at 125-126. These assessments

total $1,846.62. The $800 ordered for the victim assessment, filing fee, and DNA

collection fee are mandatory obligations not subject to RCW 10.61.160(3). *Lundy*, 176

Wn. App. at 102. The "witness costs," appointed counsel, and "financial collection

costs" are discretionary assessments that total $546.62.

The remaining question is how to categorize the $500 fine imposed pursuant to the

authority granted by RCW 9A.20.021 (authorizing maximum fines for each class of

crimes).[3] Washington long has recognized fines and costs[4] as representing different

---

[3] Class A felonies are subject to a $50,000 maximum fine; class B felonies to a $20,000 fine; class C felonies to a $10,000 fine; gross misdemeanors to a $5,000 fine; misdemeanors are subject to a $1,000 maximum fine. RCW 9A.20.021.

[4] *See, e.g., Bergman v. State*, 187 Wash. 622, 625, 60 P.2d 699 (1936); *Foster v. Territory*, 1 Wash. 411, 25 P. 459 (1890). In *Bergman*, the court was considering whether the State could seek judgment against marital property for *costs* imposed against the defendant husband. 187 Wash. at 623-624. In considering precedent from another state regarding a similar issue for *a fine* the court recognized the distinction between fines and costs:

> A fine is a sum of money exacted, as a pecuniary punishment, from a person guilty of an offense, while costs are but statutory allowances to a party for his expenses incurred in an action. The former is, in its nature at least, a penalty, while the latter approaches more nearly a civil debt.

*Id.* at 625. In *Foster*, a court assessed a $500 fine and $20 in costs at sentencing. 1 Wash. at 412. The defendant argued on appeal that this essentially amounted to a $520 fine in violation of the $500 statutory maximum. *Id.* at 414. The court rejected this argument noting that fines and costs are distinct in the code. *Id.*

obligations. For instance, the definition of "legal financial obligation" under the

Sentencing Reform Act

> means a sum of money that is ordered by a superior court of the state of
> Washington for legal financial obligations which may include restitution to
> the victim, statutorily imposed crime victims' compensation fees as
> assessed pursuant to RCW 7.68.035, court costs, county or interlocal drug
> funds, court-appointed attorneys' fees, and costs of defense, fines, and any
> other financial obligation that is assessed to the offender as a result of a
> felony conviction.

RCW 9.94A.030(30). This definition distinguishes among different types of costs, other

financial obligations, and fines.

The term "costs" is generally defined in the first two sentences of RCW

10.01.160(2):

> Costs shall be limited to expenses specially incurred by the state in
> prosecuting the defendant or in administering the deferred prosecution
> program under chapter 10.05 RCW or pretrial supervision. They cannot
> include expenses inherent in providing a constitutionally guaranteed jury
> trial or expenditures in connection with the maintenance and operation of
> government agencies that must be made by the public irrespective of
> specific violations of law.

The statute then goes on to list a series of "costs" that may or may not be imposed,

including: warrant service costs, jury fees, costs of administering deferred prosecution or

pretrial supervision, and incarceration costs. *Id.* The very next provision of the rule

declares that a court "shall not order a defendant to pay costs unless the defendant is or

will be able to pay them" and requires trial judges to conduct inquiries concerning the

7

defendant's financial circumstances. RCW 10.01.160(3). This was the provision at issue in *Blazina*.

The decision to impose a fine pursuant to RCW 9A.20.021 appears[5] to be discretionary with the trial court. *E.g.*, *State v. Young*, 83 Wn.2d 937, 941, 523 P.2d 934 (1974); *State v. Newton*, 29 Wash. 373, 382, 70 Pac. 31 (1902); 13 FERGUSON, WASHINGTON PRACTICE, CRIMINAL PRACTICE AND PROCEDURE, § 4813 at 376 (2004). However, the fact that imposing a fine under this general statute is a discretionary act does not make the fine a discretionary "cost" within the meaning of RCW 10.01.160(3). The definition of "costs" in RCW 10.01.160(2) does not include "fines." Accordingly, we hold that a fine is not a court cost subject to the strictures of RCW 10.01.160(3) and the trial court is not required to conduct an inquiry into the defendant's ability to pay. Therefore, a previously unchallenged fine is not subject to review initially on appeal. RAP 2.5(a). Nonetheless, we strongly urge trial judges to consider the defendant's ability to pay before imposing fines. The barriers that LFOs impose on an offender's reintegration to society are well documented in *Blazina* and should not be imposed lightly merely because the legislature has not dictated that judges conduct the same inquiry required for discretionary costs. Moreover, conducting such an inquiry may protect a timely challenged decision to impose a fine by establishing a tenable basis for the fine.

---

[5] But, *see City of Seattle v. Fuller*, 177 Wn.2d 263, 278, 300 P.3d 340 (2013) (suggesting that either fine or imprisonment mandatory under RCW 9A.20.020).

The remaining discretionary costs subject to challenge under *Blazina* amount to $546.62. We exercise the discretion recognized in that decision and decline to consider Mr. Clark's LFO argument despite the fact the LFO discussion at sentencing may be the sparsest record we have reviewed. The record suggests that the understated LFO discussion was by design. The critical issue for Mr. Clark was whether his sentences would run concurrently or consecutively, so counsel understandably directed his attention to that issue. When given the opportunity to address the LFOs, counsel simply asked that a minimal monthly amount be imposed given the LFOs in the other case. Since the sentencing in the other matter had been shortly before this case, it appears that Mr. Clark's financial situation may have been more fully discussed on that occasion. But, even if it was not, counsel had the opportunity to make an argument if he desired to do so. On balance, this does not appear to be a situation that calls for us to exercise our discretion to review the matter more fully.

The judgment is affirmed.

A majority of the panel having determined that only the foregoing portion of this opinion will be printed in the Washington Appellate Reports and that the remainder having no precedential value shall be filed for public record pursuant to RCW 2.06.040, it is so ordered.

*Time for Trial*

Mr. Clark, through his counsel and also pro se in his SAG, takes issue with the timeliness of his trial under CrR 3.3. The trial was timely under the rule.

In its most basic terms, CrR 3.3 requires trial within 60 days of arraignment if the defendant is held in custody on the pending charge(s) or 90 days if the defendant is not in custody on the pending charge. CrR 3.3(b), (c)(1). The same time periods apply if a new commencement date is required for any of several reasons listed in CrR 3.3(c)(2).

A timely written objection to a trial date scheduled outside the requirements of the rule must be brought to the court's attention by motion or the defendant loses the opportunity to object. CrR 3.3(d). Various factors also act to exclude time from the 60- or 90-day trial period, including proceedings on unrelated charges and continuances. CrR 3.3(e)(2), (3). Whenever any period of time is excluded, there is a 30-day minimum period of time within which to bring a case to trial. CrR 3.3(b)(5). Finally, even if the trial period passes without trial, a five day cure period may be invoked. CrR 3.3(g).

With these principles in mind, Mr. Clark's time for trial argument fails on numerous grounds. He was not in custody for this charge, making the 90-day period applicable to his case. First, our record contains no written objections and no motion challenging any trial date. Thus, he has waived any claimed violation of the rule. CrR 3.3(d)(4). Second, the continuance at defense request on September 22 resulted in an excluded period of time from that date to the new trial date of October 23, adding 31 days

10

to the time for trial period. Thus, the November 3 expiration date for the 90-day period recognized at arraignment was moved back to December 4, 2014. His trial was held on November 6. He was accorded a timely trial under CrR 3.3.

The time for trial argument is without merit.

*Statement of Additional Grounds*

Mr. Clark's pro se SAG raised four issues, one of which was a time for trial claim we addressed in conjunction with his counsel's related argument. The three remaining contentions involve whether the defense had time to inspect the stolen car, whether he received reasonable representation from trial counsel, and whether evidence of Mr. Clark's prior contacts with the police was improperly admitted.

The car inspection and the representation of counsel are not issues that we can consider further because the record does not contain sufficient information to resolve them. For instance, we note that an order was entered permitting defense inspection of the vehicle. Nothing about that matter came up thereafter. We do not know if an inspection was made or not. The record likewise does not reflect any further defense concerns about the matter. There is no basis for finding error.

With respect to counsel, Mr. Clark complains that his attorney did not supply him with information he requested. The record likewise is silent on this issue. Mr. Clark also does not argue how his trial was somehow prejudiced by this alleged failure of counsel. Again, we have no basis for finding error. If Mr. Clark wants to develop this issue with

11

further evidence, his remedy is to file a personal restraint petition. *State v. McFarland*,

127 Wn.2d 322, 337-38, 899 P.2d 1251 (1995).

The final contention involves testimony from Douglas County Deputy Sheriff

Dean Schlaman near the conclusion of trial. The SAG contends that the deputy testified

about matters that he also testified to in the first trial. Here he testified without objection

that he had seen Mr. Clark in possession of the vehicle on November 27, 2013. This date

was before the car was impounded and sold. The information was relevant to establish

Mr. Clark's former control over the vehicle. No testimony was developed concerning the

nature of the former incident. We see nothing prejudicial in this testimony. More

importantly, the failure to object to the testimony waives any claim of error. *State v.*

*Guloy*, 104 Wn.2d 412, 421, 705 P.2d 1182 (1985). This claim is without merit.

None of the grounds presented in the SAG establish prejudicial error.

Accordingly, the conviction is affirmed.

_____
Korsmo, J.

WE CONCUR:

_____    _____
Siddoway, C.J.                       Fearing, J.

12