# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

# DIVISION  II

| | |
|---|---|
| STATE OF WASHINGTON, | No.  52405-8-II |
| Respondent, | |
| v. | |
| BLESS CHIECHI, | UNPUBLISHED OPINION |
| Appellant. | |

SUTTON, A.C.J. — Bless Chiechi was convicted of first degree assault with a deadly weapon enhancement.  He appeals his judgment and sentence and argues for the first time on appeal that the trial court erred by giving a first aggressor instruction.  He argues that the improper instruction precluded him from presenting a complete defense and relieved the State of its burden of proof, which is a manifest constitutional error.  Chiechi alternatively argues that his counsel was ineffective by failing to object to the first aggressor instruction.  Chiechi further argues that the trial court erred by imposing two legal financial obligations (LFOs): an interest accrual provision on all LFOs and a community supervision fee.

We hold that the trial court correctly instructed the jury on the State's proposed first aggressor instruction because the evidence supported giving the instruction.  We also hold that Chiechi did not receive ineffective assistance of counsel.  We further hold that the trial court erred by imposing the interest accrual provision on all LFOs, but did not err by imposing the community supervision fee.  We affirm Chiechi's judgment and sentence, but remand to the trial court to (1)

amend the interest accrual provision to reflect that interest shall not accrue on nonrestitution LFOs, and (2) reconsider whether Chiechi has the ability to pay the community supervision fee.

FACTS

The State charged Chiechi with one count of first degree assault with deadly weapon enhancement of Berry Bernard based on an incident on August 27, 2017, where Chiechi struck Bernard with a metal baseball bat six times. The case proceeded to a jury trial.

Bernard testified that Chiechi got into an argument with another man at a gathering they were at, became angry, and verbally threated the man. When Bernard told Chiechi to calm down, Chiechi challenged him to a fight outside. Once outside, the men threw punches and Bernard got Chiechi in a hold. Once this fight ended, Chiechi ran to his house after Bernard let him go. Shortly thereafter, Chiechi returned with a metal baseball bat to find Bernard still standing on the sidewalk outside and a second fight ensued. Chiechi called Bernard's name, Bernard turned around, and as he did Chiechi struck him in the head with the bat. Chiechi hit Bernard a total of six times with the bat.

Mike Saito, an independent witness, testified that he observed the latter portion of the first fight and the entirety of the second fight. When he observed the men outside, Bernard had a hold of Chiechi's hair. After Saito told Bernard to let Chiechi go, he did so. Chiechi ran away and retrieved the metal baseball bat from his car at his house. Chiechi and Bernard came together and Chiechi had a weapon, but Bernard did not. Saito watched Chiechi strike Bernard six times with the bat. After being struck in the head, legs, and arms, Bernard was able to take the bat away from Chiechi and throw it.

Officer Timothy Gower testified that Chiechi told him that Bernard wanted to fight, so he went to his car, retrieved a baseball bat, and struck Bernard six times. Chiechi told Officer Gower that Bernard did not have a weapon when he was striking him with the bat. After Chiechi had struck Bernard once in the leg, twice in the body, and three times in the head—Bernard ran away. After this exchange, Bernard returned with pruning shears and swung them at him, missed, and left.

Chiechi testified that Bernard challenged him to fight. According to Chiechi, he left the house to avoid Bernard. Bernard followed him, then pulled his hair from behind while they were walking on the sidewalk. Bernard continued to hold his hair while they walked to Chiechi's house. As they got closer to his house, Bernard was holding his hair with one hand and punching him with the other. While this occurred, Chiechi was able to open his locked car door and retrieve a metal bat from inside. He then hit Bernard with the bat in the legs, causing Bernard to release his hair. Bernard left and returned with metal shears. Bernard then struck him with the metal cutter. Chiechi then warned Bernard that if he had to injure him, he would not be breaking the law because Bernard was at his house. After being hit, he struck Bernard. Bernard then ran to Chiechi's car in an effort to strike it. Chiechi then struck Bernard in the head because Bernard had struck him with the cutter and said he would damage his car.

The State proposed a first aggressor jury instruction. Defense counsel did not object to the instruction, and agreed that the instruction correctly stated the law. The trial court gave the following first aggressor jury instruction:

No person may, by any intentional act reasonably likely to provoke a belligerent response, create a necessity for acting in self-defense and thereupon, use, offer or attempt to use force upon or toward another person. Therefore, if you find beyond a reasonable doubt that defendant was the aggressor, and that [the] defendant's acts and conduct provoked or commenced the fight, then self-defense is not available as a defense.

Clerk's papers (CP) at 89.

The trial court also gave the following self-defense jury instruction:

It is a defense to a charge of assault in first or second degree that the force used was lawful as defined in this instruction.

The use of force upon or toward the person of another is lawful when used by a person who reasonably believes that he is about to be injured in preventing or attempting to prevent an offense against the person, and when the force is not more than is necessary.

The use of force upon or toward the person of another is lawful when used in preventing or attempting to prevent a malicious trespass or other maliciousness interference with real or personal property lawfully in that person's possession, and when the force is not more than is necessary.

The person using the force may employ such force and means as a reasonably prudent person would use under the same or similar conditions as they appeared to the person, taking into consideration all of the facts and circumstances known to the person at the time of and prior to the incident.

The State has the burden of proving beyond a reasonable doubt that the force used by the defendant was not lawful. If you find that the State has not proved the absence of this defense beyond a reasonable doubt, it will be your duty to return a verdict of not guilty.

CP at 85.

In closing, Chiechi's counsel made the following arguments:

And what [the evidence] has shown is that my client, Bless Chiechi, is the victim.

. . . .

Ladies and gentlemen, my client was defending himself that night. He was not the aggressor, and he did what was necessary and appropriate in that situation.

. . . .

What did Berry [Bernard] tell to Officer Gower? Well, he admitted to being the aggressor. . . . He said that he put Bless [Chiechi] in a headlock.

. . . .

How did the fight start? According to Berry, Bless swung at him. That's what he testified to at this trial. . . . So, basically, everyone who was present that testified, including my client, said that Berry was the aggressor, the one [who] started this[.]

. . . .

Ladies and gentlemen, when you look at all of this it's clear that Bless was not the aggressor . . . . What did occur is that my client was defending himself.

. . . .

If my client was the aggressor, where would the fight have occurred? At [the gathering]. It didn't. It happened on the way to his house.

The circumstantial evidence shows that my client was not the one that wanted to get in a fight at that time. My client testifi[ed] that his hair was being pulled, that he was being attacked by this person [on the way] to his house.

. . . .

What is appropriate? What is necessary? Well, when examining that question, let's step back and let's go with just what the Prosecutor is going to say happened. That my client hit [Bernard] six times when he didn't have a weapon. Even in that situation, self-defense is appropriate.

Verbatim Report of Proceedings (VRP) (June 21, 2018) at 464, 467, 472, 474, 477, 478, 480.

The jury found Chiechi guilty of first degree assault with a deadly weapon enhancement.

In Chiechi's judgment and sentence, the court imposed an interest accrual provision on all LFOs and a community supervision fee, despite finding him indigent. Chiechi appeals his judgment and sentence.

## ANALYSIS

### I. FIRST AGGRESSOR JURY INSTRUCTION

Chiechi argues for the first time on appeal that the trial court erred by giving a first aggressor jury instruction because (1) it precluded him from presenting a complete defense and (2) it relieved the State of its burden of proof, which he claims is a manifest constitutional error under

RAP 2.5(a)(3). The State argues that the evidence supported the court's giving the instruction, and the claimed error was not manifest because it had no practical and identifiable consequence on the trial. We agree with the State.

*State v. Grott*, 195 Wn.2d 256, 458 P.3d 750 (2020) recently clarified that a proper first aggressor instruction holds the State to its burden of proof, and even if given in error, it is not a constitutional error, nor is the error manifest when the evidence is conflicting. We hold that the first aggressor instruction correctly stated the law, the evidence was conflicting, there is no manifest constitutional error, and RAP 2.5(a)(3) does not apply.

The basic legal principles underlying self-defense and first aggressor instructions are well settled. A defendant's use of force is lawful when he has a "'subjective, reasonable belief of imminent harm from the victim.'" *Grott*, 195 Wn.2d at 266 (quoting *State v. LeFaber*, 128 Wn.2d 896, 899, 913 P.2d 369 (1996)). The force used may not be "more than is necessary." RCW 9A.16.020(3).

"'The evidence of self-defense must be assessed from the standpoint of the reasonably prudent person standing in the shoes of the defendant, knowing all the defendant knows and seeing all the defendant sees.'" *Grott*, 195 Wn.2d at 266 (quoting *State v. Riley*, 137 Wn.2d 904, 909, 976 P.2d 624 (1999)). If the defendant can produce "some evidence that his or her actions occurred in circumstances amounting to self-defense," then the State must prove the absence of self-defense beyond a reasonable doubt. *Riley*, 137 Wn.2d at 909.

Generally, "'the right of self-defense cannot be successfully invoked by an aggressor or one who provokes an altercation.'" *Grott*, 195 Wn.2d at 266 (quoting *Riley*, 137 Wn.2d at 909). "'[T]he reason one generally cannot claim self-defense when one is an aggressor is because the

aggressor's victim, defending himself against the aggressor, is using lawful, not unlawful, force; and the force defended against must be unlawful force, for self-defense.'" *Grott*, 195 Wn.2d at 266 (alteration in original) (internal quotation marks omitted) (quoting *Riley*, 137 Wn.2d at 911). "'[A]n aggressor instruction impacts a defendant's claim of self-defense,' so 'courts should use care in giving an aggressor instruction.'" *Grott*, 195 Wn.2d at 266 (alteration in original) (quoting *Riley*, 137 Wn.2d at 910 n.2). "However, first aggressor instructions 'should be given where called for by the evidence.'" *Grott*, 195 Wn.2d at 266 (quoting *Riley*, 137 Wn.2d at 910 n.2).

"[N]ot all [allegedly] erroneously given first aggressor instructions are manifest errors affecting a constitutional right for purposes of RAP 2.5(a)(3)." *Grott*, 195 Wn.2d at 266-67. Rather, we evaluate unpreserved objections to first aggressor instructions "on a case-by-case basis to determine whether they may be raised for the first time on appeal." *Grott*, 195 Wn.2d at 267.

"[T]he question of whether a first aggressor instruction should be given is a highly fact-specific inquiry, such that broad, bright-line rules are rarely appropriate." *Grott*, 195 Wn.2d at 267. "Where . . . the issue on appeal is whether the evidence was sufficient to support giving a first aggressor instruction, appellate courts must carefully consider the specific evidence presented at trial in the light most favorable to the requesting party." *Grott*, 195 Wn.2d at 267. Applying that standard, we hold that the evidence in this case was sufficient to support giving a first aggressor instruction.

As discussed above, for the first time on appeal Chiechi objects to the trial court's first aggressor instruction. He agreed below that the instruction correctly stated the law, but now argues that it was not supported by the evidence.

Generally, parties must object to proposed jury instructions contemporaneously. CrR 6.15(c). However, RAP 2.5(a)(3) allows a party to object for the first time on appeal where there is a "manifest error affecting a constitutional right." The application of RAP 2.5(a)(3) depends on the answers to two questions: "(1) Has the party claiming error shown [that] the error is truly of a constitutional magnitude, and if so, (2) has the party demonstrated that the error is manifest?" *State v. Kalebaugh*, 183 Wn.2d 578, 583, 355 P.3d 253 (2015). In this case, the answer to both questions is no.

Our Supreme Court has previously acknowledged that a first aggressor instruction "impacts a defendant's claim of self-defense." *Riley*, 137 Wn.2d at 910 n.2. "[T]his does not mean that all [allegedly] erroneously given first aggressor instructions are errors of constitutional magnitude." *Grott*, 195 Wn.2d at 268. Rather, just like with unpreserved objections to self-defense instructions, "We look to the asserted claim and assess whether, if correct, it implicates a constitutional interest as compared to another form of trial error." *State v. O'Hara*, 167 Wn.2d 91, 98, 217 P.3d 756 (2009). We conduct this evaluation "on a case-by-case basis." *O'Hara*, 167 Wn.2d at 104.

Our Supreme Court has recently explained that jury instructional errors constitute manifest constitutional error when they direct a verdict, shift the burden of proof to the defendant, fail to define the "'beyond a reasonable doubt'" standard, fail to require a unanimous verdict, or omit an element of the crime charged. *Grott*, 195 Wn.2d at 268 (quoting *O'Hara*, 167 Wn.2d at 100). "[F]irst aggressor instructions are used to explain to the jury *one way* in which the State *may meet* its burden: by proving beyond a reasonable doubt that the defendant provoked the need to act in self-defense." *Grott*, 195 Wn.2d at 268 (emphasis added). "Because first aggressor instructions

do not actually relieve the State of its burden of proof, [allegedly] erroneously given first aggressor instructions are not necessarily errors of constitutional magnitude." *Grott*, 195 Wn.2d at 268-69.

Here, the court's first aggressor instruction and instruction on self-defense allowed Chiechi to argue his theory of the case, focusing during closing argument on the actions of Bernard, not Chiechi. The first aggressor instruction correctly held the State to its burden of proof by requiring the jury to "find beyond a reasonable doubt that [the] defendant was the aggressor, and that [the] defendant's acts and conduct provoked or commenced the fight, then self-defense is not available as a defense." CP at 89. Thus, as in *Grott*, even if the first aggressor instruction was erroneously given, which it was not, the error is not of constitutional magnitude.

## II. INEFFECTIVE ASSISTANCE OF COUNSEL

Chiechi argues that he received ineffective assistance of counsel because his trial counsel did not object to the first aggressor instruction and agreed that the instruction correctly stated the law. The State disagrees because there were legitimate trial tactics for not objecting as it allowed counsel to focus his closing argument on the actions of Bernard rather than the actions of Chiechi. We hold that Chiechi did not receive ineffective assistance of counsel.

The Sixth Amendment and article I, section 22 of the Washington Constitution guarantee criminal defendants the right to effective assistance of counsel. *State v. Estes*, 188 Wn.2d 450, 457, 395 P.3d 1045 (2017).

To prevail on an ineffective assistance of counsel claim, the defendant must show both that (1) defense counsel's representation was deficient and (2) the deficient representation prejudiced the defendant. *Estes*, 188 Wn.2d at 457-58. Representation is deficient if, after considering all the circumstances, it falls below an objective standard of reasonableness. *Estes*, 188 Wn.2d at

458. Prejudice exists if there is a reasonable probability that except for counsel's errors, the result of the proceeding would have differed. *Estes*, 188 Wn.2d at 458. Reasonable probability in this context means a probability sufficient to undermine confidence in the outcome. *Estes*, 188 Wn.2d at 458.

We apply a strong presumption that defense counsel's performance was reasonable. *Estes*, 188 Wn.2d at 458. Counsel's conduct is not deficient if it was based on what can be characterized as legitimate trial strategy or tactics. *Estes*, 188 Wn.2d at 458. To rebut the strong presumption that counsel's performance was effective, "the defendant bears the burden of establishing the absence of any '*conceivable* legitimate tactic explaining counsel's performance.'" *State v. Grier*, 171 Wn.2d 17, 42, 246 P.3d 1260 (2011) (quoting *State v. Reichenbach*, 153 Wn.2d 126, 130, 101 P.3d 80 (2004)).

The trial court correctly instructed the jury that the State had the burden of disproving the lawful use of force beyond a reasonable doubt. The first aggressor instruction did not shift the State's burden of proof. Because the trial court would not have granted the motion, there was no harm in the failure to object.

### III. LFOs

Chiechi argues that the trial court erred by imposing an interest accrual provision on all LFOs and a community supervision fee. We agree and remand to the trial court to amend the interest accrual provision and reconsider whether Chiechi has the ability to pay the community supervision fee, a discretionary fee.

RCW 10.01.160(3) now provides that the trial court shall not order a defendant to pay costs if a defendant is indigent as defined in RCW 10.101.010(3)(a) through (c). Similarly, RCW 9.94A.760(1) now provides that the trial court cannot order "costs" as described in RCW 10.01.160 if the defendant is indigent as defined in RCW 10.101.010(3)(a) through (c). RCW 10.01.160(2) limits costs "to expenses specially incurred by the state in prosecuting the defendant or in administering the deferred prosecution program under chapter 10.05 RCW or pretrial supervision." Recent legislation also prohibits trial courts from imposing interest accrual provisions on the nonrestitution portions of LFOs on indigent defendants. RCW 10.82.090.

## A. INTEREST ACCRUAL PROVISION

Chiechi argues that the trial court improperly imposed an interest accrual provision on nonrestitution LFOs. We agree.

RCW 10.82.090 differentiates between restitution and nonrestitution LFOs. As discussed above, trial courts are now prohibited from imposing an interest accrual provision on nonrestitution LFOs. RCW 10.82.090.

Here, the trial court imposed an interest accrual provision on all LFOs. Because the court erred by imposing interest on all LFOs, we remand for the court to amend the interest accrual provision to reflect that interest shall not accrue on nonrestitution LFOs.

## B. COMMUNITY SUPERVISION FEE

Chiechi also argues that the trial court improperly imposed a community supervision fee. We hold that based on the court's finding that Chiechi is indigent, on remand, the court should reexamine imposition of this fee.

Here, Chiechi's community supervision fee was not imposed under any particular statute. However, RCW 9.94A.703(2)(d) governs supervision fees and states, "Unless waived by the court, as part of any term of community custody, the court shall order an offender to . . . [p]ay supervision fees as determined by the [Department of Corrections]." The supervision fee is a discretionary LFO. *State v. Lundstrom*, 6 Wn. App. 2d 388, 396 n.3, 429 P.3d 1116 (2018), *review denied*, 193 Wn.2d 1007 (2019).

However, the supervision fee is not a discretionary "cost" merely because it is a discretionary LFO. Rather, the supervision fee fails to meet the RCW 10.01.160(2) definition of a "cost" because it is not an expense specially incurred by the State to prosecutor the defendant, to administer a deferred prosecution program, or to administer pretrial supervision. Because the supervision fee is not a "cost" as defined under RCW 10.01.160, the statutes do not prohibit the trial court from imposing the fee based on the court's finding that Chiechi is indigent.

We note, however, that "[t]he barriers that LFOs impose on an offender's reintegration to society are well documented . . . and should not be imposed lightly merely because the legislature has not dictated that judges conduct the same inquiry required for discretionary costs." *State v. Clark*, 191 Wn. App. 369, 376, 362 P.3d 309 (2015). We agree that this important policy should be broadly supported. Therefore, we encourage the trial court on remand to reexamine the imposition of the supervision assessment fee on Chiechi.

CONCLUSION

We hold that trial court correctly instructed the jury on the State's proposed first aggressor instruction because the evidence supported giving the instruction. We also hold that Chiechi did not receive ineffective assistance of counsel. We further hold that the trial court erred by imposing

the interest accrual provision on all LFOs, but did not err by imposing the community supervision fee. We affirm Chiechi's judgment and sentence, but remand to the trial court to (1) amend the interest accrual provision to reflect that interest shall not accrue on nonrestitution LFOs, and (2) reconsider whether Chiechi has the ability to pay the community supervision fee.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

SUTTON, A.C.J.

We concur:

MAXA, J.

GLASGOW, J.