# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| STATE OF WASHINGTON,<br><br>                    Respondent,<br><br>    v.<br><br>GARY DEAN ARVIDSON,<br><br>                    Appellant. | No. 53130-5-II<br><br><br><br>UNPUBLISHED OPINION |

CRUSER, J. — Gary Arvidson appeals his conviction and sentence for custodial assault as well as his legal financial obligations (LFOs). He argues that the evidence is insufficient to support his custodial assault conviction, the trial court erred by requiring a mental health evaluation and treatment, the trial court erred by imposing a community placement fee, and the trial court erred by imposing interest on his nonrestitution LFOs.

We affirm Arvidson's custodial assault conviction and the community placement fee. However, we hold that the trial court erred by ordering a mental health evaluation and treatment without making any findings to support such an order and by imposing the interest accrual provision on his nonrestitution LFOs. Accordingly, we remand this matter to the trial court to readdress the mental health provision and strike the interest accrual provision from Arvidson's judgment and sentence.

FACTS

In May 2018, Deputy Britton, a sheriff's deputy at the Mason County jail, was escorting Arvidson, an inmate, to the showers. Arvidson slipped on some water on the floor. Britton attempted to keep Arvidson from falling by embracing him. Arvidson then became aggressive. Arvidson looked at Britton, smiled, grabbed Britton's arm, and applied "a lot of pressure." Report of Proceedings (RP) at 128. Britton decided to return Arvidson to his cell, although he did not inform Arvidson of this decision. Britton used an "escort hold" to get Arvidson back into his cell, and at some point during that process Arvidson used his left hand to strike Britton in the face. *Id.* at 128.

The State charged Arvidson with custodial assault under RCW 9A.36.100(1). At trial Britton testified consistently with the facts set forth above, and a recording of the incident was played for the jury. In the video, Arvidson can be seen swinging at Britton. Arvidson did not testify or present any witnesses or evidence.

During closing argument, defense counsel argued that Arvidson "struck out" because he was "confused" as a result of being moved without verbal instruction and not being told where he was going. RP at 158. Defense counsel suggested that the contact between Arvidson and Britton was not intentional.

The court instructed the jury that a "person commits the crime of custodial assault when he or she intentionally assaults" a staff member of a local detention facility. Clerk's Papers (CP) at 101. The court further instructed the jury that a person acts with intent when that person acts "with the objective or purpose to accomplish a result that constitutes a crime." *Id.* at 103.

The jury found Arvidson guilty of custodial assault. The court sentenced Arvidson as a first-time offender and imposed 45 days in jail and 12 months of community custody. As part of the community custody, the trial court ordered Arvidson to undergo a "mental health evaluation within 30 days of release from custody, provide a copy of the evaluation to the [Community Corrections Officer (CCO)], successfully participate in and complete all recommended treatment, and sign all releases necessary to ensure that the CCO can consult with the treatment provider to monitor progress and compliance." *Id.* at 133. Arvidson was further ordered to "participate in mental health counseling or treatment at the direction of the CCO." *Id.* at 134. At sentencing, the court noted "I do think a first time offender makes sense to the Court, and that is to guarantee that Mr. Arvidson would . . . do . . . a mental health evaluation, and follow through with treatment." RP at 166-67. The trial court did not make any findings in support of its order for a mental health examination and treatment or whether mental illness played a role in Arvidson's assault of Britton.

Regarding the LFOs, the court noted Arvidson's indigency and imposed "the $500 crime victims [fee] as the only monetary sanction." *Id.* at 168. The court struck the criminal filing fee and DNA collection fee. Arvidson was required to "pay a community placement fee as determined by the Department of Corrections [(DOC)]." CP at 133. The court required the financial obligations to "bear interest from the date of judgment until payment in full." *Id.* at 127.

Arvidson appeals his conviction and sentence.

## DISCUSSION

### I. SUFFICIENCY OF THE EVIDENCE

Arvidson contends that his custodial assault conviction rests on insufficient evidence because the evidence equally supported inferences of intentional and unintentional contact. We disagree.

### A. STANDARD OF REVIEW

This court reviews challenges to the sufficiency of the evidence de novo. *State v. Rich*, 184 Wn.2d 897, 903, 365 P.3d 746 (2016). Evidence is sufficient to support a conviction if, viewing the evidence in the light most favorable to the State, any rational trier of fact can find the essential elements of the crime beyond a reasonable doubt. *State v. Salinas*, 119 Wn.2d 192, 201, 829 P.2d 1068 (1992). "In claiming insufficient evidence, the defendant necessarily admits the truth of the State's evidence and all reasonable inferences that can be drawn from it." *State v. Homan*, 181 Wn.2d 102, 106, 330 P.3d 182 (2014). Such inferences "'must be drawn in favor of the State and interpreted most strongly against the defendant.'" *State v. Kintz*, 169 Wn.2d 537, 551, 238 P.3d 470 (2010) (quoting *Salinas*, 119 Wn.2d at 201). The jury is the sole judge of witness credibility, and we defer to the jury on issues of conflicting testimony and the weight and persuasiveness of the evidence. *State v. Andy*, 182 Wn.2d 294, 303, 340 P.3d 840 (2014) (quoting *State v. Thomas*, 150 Wn.2d 821, 874-75, 83 P.3d 970 (2004)).

### B. ANALYSIS

Arvidson argues that the evidence is insufficient to support his conviction because he flailed his arms without the intent to hit Britton. He contends there was no testimony that he was

verbally angry or that he was uncooperative. We disagree with Arvidson and conclude that the evidence is sufficient for a rational juror to conclude that Arvidson acted with intent.

"When intent is an element of the crime, 'intent to commit a crime may be inferred if the defendant's conduct and surrounding facts and circumstances plainly indicate such an intent as a matter of logical probability.'" *State v. Vasquez*, 178 Wn.2d 1, 8, 309 P.3d 318 (2013) (quoting *State v. Woods*, 63 Wn. App. 588, 591, 821 P.2d 1235 (1991)). A jury can logically infer intent from proven facts, if it is satisfied the State has proved that intent beyond a reasonable doubt. *State v. Bencivenga*, 137 Wn.2d 703, 708-09, 974 P.2d 832 (1999). Determining the reasonableness of an inference is for the jury, not the appellate court. *State v. Samalia*, 186 Wn.2d 262, 276, 375 P.3d 1082 (2016). Even where multiple inferences can be drawn, the jury may discard inferences that it deems unreasonable. *Bencivenga*, 137 Wn.2d at 708-09.

Here, the jury watched a video of the assault and heard testimony from Britton. The video showed Arvidson swinging his arm toward Britton's face. Britton testified that Arvidson was aggressive and that he felt his (Britton's) safety was going to be at risk unless he returned Arvidson to his cell. Britton also testified that Arvidson "used his left hand and struck my face on my right side." RP at 128. The jury's determination of Britton's credibility is not reviewable on appeal. *Bencivenga*, 137 Wn.2d at 709.

Although Arvidson argued to the jury that he did not intentionally assault Britton, the jury, after reviewing all the evidence, concluded otherwise. Additionally, even if the jury believed that Arvidson struck out because of his confusion at not being told about the move back to his cell, this would not negate the jury's conclusion that Arvidson acted with intent. *See id.* at 708-09.

Taking the evidence in the light most favorable to the State, the evidence is sufficient to support the jury's verdict.

## II. MENTAL HEALTH EVALUATION AND TREATMENT

Arvidson argues that the trial court erred in ordering him to undergo a mental health evaluation and treatment as a condition of his community custody because the trial court failed to make any factual findings in support of its order. The State concedes this error and asks us to remand this matter to the trial court so that it can make any necessary findings. We agree with the parties that the trial court erred.

"We review the imposition of community custody conditions for an abuse of discretion." *State v. Johnson*, 184 Wn. App. 777, 779, 340 P.3d 230 (2014). The court abuses its discretion if the court's decision is manifestly unreasonable or is exercised for untenable reasons. *State v. Dye*, 178 Wn.2d 541, 548, 309 P.3d 1192 (2013). Untenable grounds include decisions that are contrary to law. *State v. Brooks*, 142 Wn. App. 842, 850, 176 P.3d 549 (2008).

A trial court can only impose a community custody condition if the condition is authorized by the legislature. *State v. Warnock*, 174 Wn. App. 608, 611, 299 P.3d 1173 (2013) (citing *State v. Kolesnik*, 146 Wn. App. 790, 806, 192 P.3d 937 (2008)).

Under RCW 9.94A.703(3)(c) and (d),[1] respectively, a trial court may order a defendant to participate in crime related treatment or counseling, and may order a defendant to participate in "rehabilitative programs or otherwise perform affirmative conduct reasonably related to the circumstances of the offense, the offender's risk of reoffending, or the safety of the community."

---

[1] The legislature amended RCW 9.94A.703 in 2018. LAWS OF 2018, ch. 201 § 9004. Because the amendment did not change subsection (3), we cite to the current version of the statute.

The parties agree that under RCW 9.94A.703(3), the trial court was required to make factual findings in support of its order for a mental health evaluation and treatment.

Here, as the parties note, the trial court did not make any factual findings in support of its order for a mental health examination and treatment. Thus, we reverse the trial court and remand this matter for the trial court to determine whether a mental health evaluation and treatment is warranted and, if so, to make any necessary findings.[2]

### III. LEGAL FINANCIAL OBLIGATIONS

#### A. COMMUNITY PLACEMENT FEE

Arvidson argues, and the State concedes, that the community placement fee must be stricken because it is a discretionary LFO. However, the community placement fee, while discretionary, is not a cost under RCW 10.01.160.[3] We disagree with Arvidson and reject the State's concession for this reason. However, we note the court may reconsider this fee on remand.

Under RCW 10.01.160(3) the trial court shall not order a defendant to pay *costs* if a defendant is indigent. RCW 10.01.160(2) limits costs "to expenses specially incurred by the state in prosecuting the defendant or in administering the deferred prosecution program under chapter 10.05 RCW or pretrial supervision."

---

[2] Arvidson also argued in his opening brief that under RCW 9.94B.080, a trial court must base its findings about the necessity of mental health treatment on a presentence report, which was not done in this case. However, even if RCW 9.94B.080 was applicable in this case, that statute was amended in 2015 so that it no longer requires a presentencing report. LAWS OF 2015, ch. 80, § 1. The effective date of the amendment was July 24, 2015. LAWS OF 2015. Arvidson's crime occurred in 2018, well after the effective date of the amendment.

[3] The legislature amended RCW 10.01.160 in 2018. LAWS OF 2018, ch. 269 § 6. However, this amendment ultimately has no bearing on our analysis; therefore, we cite to the current version of the statute.

Here, Arvidson's community placement fee was imposed under RCW 9.94A.703(2)(d), which states, "Unless waived by the court, as part of any term of community custody, the court shall order an offender to . . . [p]ay supervision fees as determined by the [DOC]." The community placement fee is considered to be a discretionary LFO. *State v. Lundstrom*, 6 Wn. App. 2d 388, 396 n.3, 429 P.3d 1116 (2018).

It is true that the community placement fee is a discretionary LFO. However, community placement fees clearly do not meet the definition of a cost under RCW 10.01.160(2) because they are not an expense specially incurred by the State to prosecute the defendant, to administer a deferred prosecution program, or to administer pretrial supervision. *State v. Spaulding*, 15 Wn. App. 2d 526, 536-37, 476 P.3d 205 (2020). They are not a pre-conviction expense to be recouped— instead, community placement fees are intended to cover post-conviction costs that will be incurred at a later date to help fund the DOC. And RCW 10.01.160(2) expressly requires that costs be limited to three specific categories of expenses. We would need to ignore the plain language of RCW 10.01.160(2) and expand the definition of costs in order to conclude that community placement fees were costs, which is the legislature's role, not this court's.

Because community placement fees are not costs, the trial court did not err when it imposed these fees despite Arvidson's indigency status. *See Spaulding*, 15 Wn. App. 2d at 536-37; *State v. Clark*, 191 Wn. App. 369, 374-75, 362 P.3d 309 (2015) (distinguishing fines from costs).

There are, however, strong policy arguments in favor of considering a defendant's ability to pay discretionary LFOs before imposing them, even when such consideration is not required. *Clark*, 191 Wn. App. at 376. In *Clark*, we said "[t]he barriers that LFOs impose on an offender's reintegration to society are well documented . . . and should not be imposed lightly merely because

the legislature has not dictated that judges conduct the same inquiry required for discretionary costs." *Clark*, 191 Wn. App. at 376. Therefore, on remand, although the trial court is not required to reevaluate imposing the community placement fee in light of Arvidson's ability to pay, the trial court may exercise its discretion and do so.

B. INTEREST ACCRUAL ON NONRESTITUTION LFOS

Arvidson argues that under RCW 10.82.090(1), the trial court erred in imposing interest on his nonrestitution LFOs. The State concedes that this was error.

"RCW 10.82.090(1) provides, in part, '[a]s of June 7, 2018, no interest shall accrue on nonrestitution [LFOs].'" *State v. Johns*, ___ Wn. App. 2d ___, 477 P.3d 522, 523 (2020).

Because Arvidson was sentenced after June 7, 2018, the trial court erred in imposing interest on nonrestitution LFOs. Accordingly, we accept the State's concession.

## CONCLUSION

We hold that the State presented sufficient evidence to sustain Arvidson's conviction for custodial assault. We further hold that the trial court failed to make the required findings before ordering a mental health evaluation and treatment as part of Arvidson's community custody. We remand the matter to give the trial court an opportunity to make appropriate findings. Finally, we hold that the trial court did not err in imposing the community placement fee but erred in imposing the nonrestitution interest accrual provision.

No. 53130-5-II

Accordingly, we affirm in part, reverse in part, and remand this matter to the trial court for proceedings consistent with this opinion.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

CRUSER, J.

We concur:

WORSWICK, P.J.

MELNICK, J.P.T.