# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | |
|---|---|
| STATE OF WASHINGTON, | DIVISION ONE |
| Respondent, | No. 80844-3-I |
| v. | UNPUBLISHED OPINION |
| PAUL MARSHALL, | |
| Petitioner. | |

DWYER, J. — Paul Marshall seeks review of the superior court's order affirming the district court's imposition of discretionary legal financial obligations. Marshall contends that the superior court erred by affirming the district court's imposition of certain legal financial obligations because the district court failed to conduct an adequate inquiry into his ability to pay. Finding no error, we affirm.

I

A jury convicted Paul Marshall of one count of driving under the influence (DUI), alleged to have occurred on February 28, 2014. At sentencing, which took place on April 4, 2018, the State recommended that the court impose a five-year suspended sentence while requiring Marshall to serve 10 days in jail, pay a $350 fine, and pay certain other statutory fees.[1] Marshall's counsel requested that the district court impose a two-year suspended sentence, require that Marshall serve

---

[1] The State recommended that the court impose 360 days of jail time with 350 days suspended, a $5,000 fine with $4,650 suspended, and "[a]dditional statutory fines."

the mandatory minimum of one day in jail, and waive all discretionary legal financial obligations.[2]

To support this request, Marshall's counsel informed the court that Marshall was a "hardworking young man" who worked at two food service jobs and was living in his truck at the time he was charged with driving under the influence. According to Marshall's counsel, in the four years since the date of the offense, Marshall had become an assistant manager at a retail store and was no longer homeless.

The court then inquired further into Marshall's present financial situation, asking Marshall's counsel: "What else do I need to know about Mr. Marshall's financial situation?" After an off-the-record conversation with Marshall, Marshall's counsel informed the court that Marshall earned $16 per hour as an assistant manager, paid $300 per month in rent, contributed to expenses such as utilities, gas, and food, had student loan debts, and had existing legal financial obligations that amounted to $1,328. Marshall's counsel informed the court that Marshall's financial situation allowed him to pay $25 per month in satisfaction of any financial obligations imposed on him at sentencing.

The court then offered Marshall an opportunity to discuss his circumstances: "You have an opportunity, Mr. Marshall, but no requirement to tell me anything about you or your circumstances before sentencing. Is there

---

[2] Whenever a DUI sentence requires a defendant to serve less than 364 days in jail, the court must impose a suspended sentence and provide for a period of probation, with certain conditions mandated by statute, of up to five years. RCW 46.61.5055(11).

anything you think I need to know?"  Marshall, through his counsel, declined the invitation.

After the inquiry into Marshall's financial circumstances, the court imposed the mandatory one day in jail, with the balance of remaining jail time suspended for five years, provided for a five-year period of probation, and imposed $838 in legal financial obligations: a $350 fine, a $43 criminal conviction fee, a $245 public safety and education assessment, and a $200 probation fee (that was reduced from the standard $550).[3]  In so doing, the court waived most discretionary legal financial obligations.  Finally, the district court ordered Marshall to make payments at a rate of $25 per month.  This allowed Marshall to satisfy the financial obligations over a 34-month period—well within the 60-month period of probation.

Marshall appealed to the Snohomish County Superior Court.  After considering the six assignments of error that were raised by Marshall, the superior court affirmed.  With regard to the legal financial obligations that were imposed by the district court, the superior court determined that the district court had conducted an adequate inquiry into Marshall's current and future ability to pay.  The superior court also concluded that the district court did not abuse its discretion when it imposed discretionary legal financial obligations, "particularly in light of the modest monthly payments it established."

Marshall petitioned this court for discretionary review of the superior court's order affirming the judgment and sentence imposed by the district court.

---

[3] Specifically, the district court imposed 360 days of jail time with 359 days suspended and a $5,000 fine with $4,650 suspended.

A commissioner of our court granted review of the claim that the superior court erred by affirming the district court's imposition of certain discretionary legal financial obligations when sentencing Marshall.

II

Marshall contends that the district court erred in imposing his sentence upon him. Specifically, Marshall asserts that the district court failed to adequately inquire into Marshall's current or future ability to pay. However, the record makes clear that the district court conducted an individualized inquiry into Marshall's financial circumstances and tailored its decision concerning the obligations imposed and the circumstances of payment to Marshall's particular financial situation. In so doing, it did not err.

A

We review the adequacy of the trial court's inquiry into a defendant's ability to pay de novo. State v. Ramirez, 191 Wn.2d 732, 740-42, 426 P.3d 714 (2018). This inquiry involves both factual and legal components. Ramirez, 191 Wn.2d at 740. Factually, we examine the record to determine "what evidence the trial court actually considered in making the . . . inquiry." Ramirez, 191 Wn.2d at 740. We then determine whether the sentencing court's inquiry satisfied the legal requirements. Ramirez, 191 Wn.2d at 740. However, the sentencing court's ultimate decision to impose nonmandatory financial obligations "is undoubtedly discretionary." Ramirez, 191 Wn.2d at 741-42. We thus review whether such obligations were validly imposed for an abuse of discretion. Ramirez, 191 Wn.2d at 741-42. A sentencing court abuses its

discretion when its decision is manifestly unreasonable or based on untenable grounds or reasons. Ramirez, 191 Wn.2d at 741.[4]

B

A sentencing court must conduct an individualized inquiry into a defendant's ability to pay before imposing discretionary costs at sentencing. RCW 10.01.160(3);[5] State v. Blazina, 182 Wn.2d 827, 838, 344 P.3d 680 (2015). In Blazina, our Supreme Court repudiated the practice then prevalent in certain courts to forego inquiring into a defendant's ability to pay and instead rely on boilerplate language in the judgment and sentence to satisfy the requirements of former RCW 10.01.160(3) (2010). See 182 Wn.2d at 831-32.[6] This practice was deemed improper because the legislature "intended each judge to conduct a case-by-case analysis" to determine which discretionary costs are "appropriate to the individual defendant's circumstances." Blazina, 182 Wn.2d at 834. Blazina makes clear that a sentencing court is required to conduct an individualized inquiry on the record into a defendant's current and future ability to pay before imposing discretionary costs as part of a sentence.[7] Blazina, 182 Wn.2d at 838.

---

[4] This decision was filed in September 2018, five months after Marshall was sentenced. It was therefore unavailable to the district court at the time of sentencing.

[5] The district court sentenced Marshall in April 2018. The latest iteration of RCW 10.01.160(3) was enacted by the 2018 legislature with an effective date of June 7, 2018. LAWS OF 2018, ch. 269.

[6] Our Supreme Court made clear the evil it sought to end. "[T]he court must do more than sign a judgment and sentence with boilerplate language stating that it engaged in the required inquiry. The record must reflect that the trial court made an individualized inquiry into the defendant's current and future ability to pay." Blazina, 182 Wn.2d at 838.

[7] Marshall asserts that the $350 fine and the $43 criminal conviction fee that were imposed by the district court are discretionary legal financial obligations that necessitated an individualized inquiry under RCW 10.01.160(3). But a fine is not a cost. State v. Clark, 191 Wn. App. 369, 375-76, 362 P.3d 309 (2015) (holding that fines are not costs "subject to the strictures of RCW 10.01.160(3)"); see also RCW 10.01.160(2) (defining "costs" without mention of fines). The State contends that the criminal conviction fee was mandatory unless Marshall was found to be indigent under RCW 10.101.010(3)(a)-(c). See RCW 3.62.085 (excluding the definition of

In conducting this inquiry, courts should consider certain "'important factors'" that relate to a defendant's ability to pay. Ramirez, 191 Wn.2d at 743 (quoting Blazina, 182 Wn.2d at 838). These factors include, but are not limited to, the defendant's incarceration, employment history, monthly income, other financial resources, monthly living expenses, and outstanding debts. Ramirez, 191 Wn.2d at 742-44. Courts must look to court rule GR 34, which lists the ways a person may prove to be indigent for the purpose of seeking a waiver of civil filing fees and surcharges, for guidance.[8] Ramirez, 191 Wn.2d at 743

---

"indigent" in RCW 10.101.010(3)(d) that encompasses people who are unable to pay the anticipated cost of counsel). We need not determine whether the criminal conviction fee is a "cost" under RCW 10.01.160(3). Because the district court imposed the probation fee, which neither party disputes is a "cost" under RCW 10.01.160(2), the district court was required to conduct an individualized inquiry into Marshall's particularized ability to pay before imposing this discretionary cost. RCW 10.01.160(3); Blazina, 182 Wn.2d at 838.

[8] GR 34 sets forth two methods by which an individual may obtain a waiver of trial court fees and charges in civil matters. See GR 34(a). An individual who is represented by a qualified legal services provider (QLSP) or an attorney working in conjunction with a QLSP may submit "a declaration of counsel stating that the individual was screened and found eligible by the QLSP." GR 34(a)(1). Additionally:

> [a]n individual who is not represented by a [QLSP] . . . or an attorney working in conjunction with a [QLSP] shall be determined to be indigent within the meaning of this rule if such person, on the basis of the information presented, establishes that:
>> (A) he or she is currently receiving assistance under a needs-based, means-tested assistance program such as the following:
>>> (i) Federal Temporary Assistance for Needy Families (TANF);
>>> (ii) State-provided general assistance for unemployable individuals (GA-U or GA-X);
>>> (iii) Federal Supplemental Security Income (SSI);
>>> (iv) Federal poverty-related veteran's benefits; or
>>> (v) Food Stamp Program (FSP); or
>> (B) his or her household income is at or below 125 percent of the federal poverty guideline; or
>> (C) his or her household income is above 125 percent of the federal poverty guideline and the applicant has recurring basic living expenses (as defined in RCW 10.101.010(4)(d)) that render him or her without the financial ability to pay the filing fees and other fees or surcharges for which a request for waiver is made; or
>> (D) other compelling circumstances exist that demonstrate an applicant's inability to pay fees and/or surcharges.

GR 34(a)(3).

For one person, the 2018 federal poverty guideline was a gross annual income of $12,140 or an approximate hourly wage of $5.84. Annual Update of the Department of

(citing Blazina, 182 Wn.2d at 838). Because defendants often desire to appear in the best possible light at sentencing, judges must critically evaluate any promise made by a defendant as to the defendant's ability to pay. Ramirez, 191 Wn.2d at 745-46.

Here, the district court's inquiry was individualized and considered necessary important factors. Marshall's counsel informed the court about Marshall's employment history, his current job as an assistant manager at a retail store, his improved housing arrangements, and his bettered life and financial situation in the four years since the date of his offense. The court then inquired further into Marshall's financial situation and provided time for him to confer with his counsel off the record. Marshall's counsel then provided the court with more details about Marshall's current financial situation. In particular, Marshall's counsel informed the court about Marshall's hourly wage of $16 per hour, his monthly rent payment of $300 per month, his outstanding legal financial obligations of $1,328, his student loan debt, and other living expenses. Marshall's counsel also requested that the court allow Marshall to make payments over time and stated that Marshall could pay $25 per month. After considering all of the information before the court, the judge then imposed a sentence whereby the court waived most discretionary legal financial obligations and allowed Marshall to satisfy the sentence by paying $25 per month over 34 months during the 60-month probation period.

---

Health and Human Services Poverty Guidelines, 83 Fed. Reg., 2642-2644 (Jan. 18, 2018).

There is nothing in the record suggesting that Marshall did not have the current and future ability to satisfy the obligations imposed by paying $25 per month. For certain, he made no such claim in the sentencing court. Instead, after consultation, his counsel actually requested that exact arrangement. And notably absent from his appellate briefing is any claim that Marshall is not in fact able to pay the amount imposed on the schedule provided.

Here, the record demonstrates that Marshall had improved his situation markedly over four years. At sentencing, he had a regular source of income as an assistant manager at a retail store. He earned $16 per hour. The $25 monthly obligation suggested by Marshall's counsel, after conferring with Marshall, required a contribution of less than two hours of earnings per month. Thus, Marshall's payment obligation and terms of payment were structured by the court to enable him to satisfy the legal financial obligations in 34 months—long before the end of his 60-month sentence.[9]

Nor is there anything dispositive about the fact that Marshall was approved for an appointed attorney at public expense. The ability of a person to gather together the amount of money necessary to hire a private attorney—on short notice—is not necessarily indicative of that same person's ability to satisfy the financial conditions of a sentence over a 60-month period. The legislature recognizes this distinction. It specifically excluded from its definition of indigency—when determining the assessment of costs at sentencing—those who

---

[9] This structure also allowed for future alterations to the plan should Marshall's financial circumstances change.

are found to be indigent pursuant to RCW 10.101.010(3)(d), the provision pertaining to eligibility for appointed counsel.

We further note several considerations not presented by the parties. First, we agree with the observation in Ramirez that courts must be aware that some defendants—in order to be well-perceived by the judge—might "over-promise" concerning their ability to pay. See 191 Wn.2d at 745-46. But sentencing judges are not compelled to view defendants as liars. Here, the judge had an ample basis to evaluate statements made regarding Marshall's ability to pay. Two key components of trustworthiness are apparent from the record: (1) Marshall was represented by counsel and the statement was made in the aftermath of an attorney-client discussion, and (2) the promise was a modest one, pledging payment of an amount less than two hours of earnings per month. Nothing in these circumstances indicated that Marshall was making a promise that he could never keep solely to avoid a more serious sentence. Rather, the payment suggested was modest in amount and consistent with his financial situation as it had been expressed to the court.

We also note that, in sentencing misdemeanants, the law encourages the judge to sentence the *person*, not just the crime. See Harris v. Charles, 171 Wn.2d 455, 465, 256 P.3d 328 (2011) (discussing differing goals of misdemeanor and felony sentencing schemes). Here, the man standing before the court had bettered his life in several ways. He had earned the trust and respect of the court, notwithstanding his four-year distant criminal act. He made a modest promise to the judge. Rather than treat this promise with unnecessary

skepticism, the judge took the basic promise and formulated a plan—imposing some fines, fees, and costs while suspending or waiving others—that would allow Marshall to succeed. This is as it should be.

In addition, trial judges well-know that one of a criminal defendant's most prized and important possessions is a job. Judges also know that most hourly workers do not enjoy the ancillary benefits of employment that are routinely bestowed on salaried employees. The record is silent as to whether Marshall had to take vacation to come to court—or even if he was allocated vacation to take. Nor do we know whether his store employed more than one assistant manager. But, in general, judges know that missing work in order to attend court is seldom a good thing for an hourly worker. This undoubtedly incentivized the district court herein to conclude the sentencing in one appearance, rather than require a continuance to obtain more or other information and thus require Marshall to once again be absent from work in the near future.

And what evidence would have made a difference? Petitioner's briefing is silent on this question. Here, the best information available was Marshall's statement—after consultation with counsel and consistent with the record—that he could pay $25 per month. As noted previously, there is no allegation that this is untrue. Instead, reversal is urged because the judge did not ask specific questions about every factor mentioned in the 2018 legislation or the Ramirez opinion—a statute and opinion that both postdate Marshall's sentencing. This is a purely formalistic objection and, in effect, seeks to substitute a new boilerplate approach for the properly-rejected boilerplate approach of days gone by.

Marshall establishes no prejudice from any variance between the inquiry employed by the sentencing court and any later-expressed expectations espoused in statute or case law.[10]

The sentencing court actively inquired into Marshall's ability to pay the legal financial obligations that it imposed. Its sentence was tailored to Marshall's circumstances. No entitlement to appellate relief is established.[11]

Affirmed.

_____
Dwyer, J.

WE CONCUR:

_____     _____
                                     Mann, C.J.

---

[10] This is not a quibble with our Supreme Court's determination that the 2018 amendment to RCW 10.10.160 applies to the district court's earlier sentencing of Marshall. See Ramirez, 191 Wn.2d at 747. Rather, it is an evaluation of the absence of prejudice shown from any variation.

[11] Should Marshall's self-assessment of his ability to pay prove to have been overly optimistic—or should his financial circumstances change for the worse—he retains the ability to request that the court remit or modify its imposition of discretionary legal financial obligations, extend his period to pay, or modify his monthly payment amount.